**Appeal Nos. 24-6134, 25-5111**

# United States Court of Appeals
# for the Sixth Circuit

ENERGY & POLICY INSTITUTE,

*Plaintiff–Appellant,*

v.

TENNESSEE VALLEY AUTHORITY,

*Defendant–Appellee.*

On Appeal from the United States District Court
for the Eastern District of Tennessee

Case No. 3:22-cv-00220-TAV-DCP

## BRIEF OF *AMICUS CURIAE* PUBLIC RECORD MEDIA SUPPORTING PLAINTIFF–APPELLANT ENERGY & POLICY INSTITUTE

Mahesha P. Subbaraman
SUBBARAMAN PLLC
80 S. 8th Street, Suite 900
Minneapolis, MN 55402
(612) 315-9210
mps@subblaw.com

*Counsel for Amicus Curiae Public Record Media*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-6134/25-5111 Case Name: Energy & Policy Inst. v. TVA

Name of counsel: Mahesha P. Subbaraman

Pursuant to 6th Cir. R. 26.1, Public Record Media (or PRM)
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on April 9, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mahesha P. Subbaraman
Counsel-of-Record for Amicus Curiae
Public Record Media

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# Table of Contents


Corporate Disclosure Statement

Table of Authorities ........ i

Amicus Identity & Interest ........ 1

Argument ........ 3

I. The Sixth Circuit should reject atextual limits on attorney-fee awards under the Freedom of Information Act (FOIA) .... 3

A. FOIA is an equal-opportunity disclosure statute meant to uphold agency transparency and accountability ........ 3

B. During a bygone era of statutory construction, various courts limited the availability of FOIA fee awards based on selective legislative history and policy concerns ........ 7

C. Intervening Supreme Court precedent requires courts to follow the text of FOIA and fee-award provisions ...... 13

D. FOIA's fee-award provision—broadened by the 2007 Open Government Act (OGA)—both lacks and negates any atextual causation rule for FOIA fee eligibility ........ 17

E. FOIA's fee-award provision—broadened by the OGA—both lacks and negates any atextual balancing test for FOIA fee entitlement (a legislative-history figment) ....... 21

II. Public Record Media's experience with FOIA and agency misconduct reaffirms the importance of judicial fidelity to the plain, broad text of FOIA's fee-award provision ........ 24

III. Adhering to the plain text of FOIA's fee-award provision, Energy & Policy Institute (EPI) merited a fee award ........ 27

Conclusion ........ 27

Certificate of Compliance ........ 29

Certificate of Service ........ 30

## Table of Authorities

Page(s)

**Cases**

*Barr v. Matteo*, 360 U.S. 564 (1959) ........ 27

*Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011) ........ 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) ........ 5, 11, 12, 19, 20

*Cox v. U.S. DOJ*, 601 F.2d 1 (D.C. Cir. 1979) ........ 10

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ........ 4, 6

*EPA v. Mink*, 410 U.S. 73 (1973) ........ 3, 4

*Energy & Policy Inst. (EPI) v. TVA*, No. 3:22-cv-220, 2025 U.S. Dist. LEXIS 20672 (E.D. Tenn. Feb. 5, 2025) ........ 28

*First Amendment Coal. v. U.S. DOJ*, 878 F.3d 1119 (9th Cir. 2017) ........ 17–21, 27

*Food Mktg. Inst. (FMI) v. Argus Leader Media*, 588 U.S. 427 (2019) ........ *passim*

*GMRI, Inc. v. EEOC*, 149 F.3d 449 (6th Cir. 1998) ........ 2, 11, 13, 17

*Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 447 (6th Cir. 2007) ........ 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) ........ 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........ 20

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) ........ 21, 22

*Lackey v. Stinnie*, No. 23-621, slip op. (U.S. Feb. 25, 2025) ........ 20

*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) ........ 13, 14, 22

*Morley v. CIA*, 719 F.3d 689 (D.C. Cir. 2013) ........ 6, 22–23

*Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) ........ 9

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) ........ 23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 16, 17

*Pub. Record Media, LLC v. U.S. Dep't of Justice*,
No. 0:12-cv-1225, 2013 U.S. Dist. LEXIS 81753
(D. Minn. Jan. 29, 2013) .......... 24–26

*Pub. Record Media, LLC v. U.S. Dep't of Justice*,
No. 0:12-cv-1225, 2013 WL 1900622
(D. Minn. May 7, 2013) .......... 25

*Rutila v. U.S. DOT*, 72 F.4th 692 (5th Cir. 2023) .......... 3

*Seegull Mfg. Co. v. NLRB*, 741 F.2d 882 (6th Cir. 1984) .......... 10

*U.S. DOJ v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) .......... 4

*Vt. Low Income Advocacy Council, Inc. v. Usery*,
546 F.2d 509 (2d Cir. 1976) .......... 7, 8

**Statutes**

Freedom of Information Act (FOIA)—

5 U.S.C. §552 ..........

5 U.S.C. §552(a)(4)(B) .......... 4

5 U.S.C. §552(a)(4)(E) .......... 2, 7, 17

5 U.S.C. §552(a)(4)(E)(ii) .......... 17

5 U.S.C. §552(b)(2) [Exemption 2] .......... 13, 14

5 U.S.C. §552(b)(4) [Exemption 4] .......... 14, 15

17 U.S.C. §505 .......... 21

35 U.S.C. §285 .......... 16

OPEN Government Act of 2007 (OGA),
Pub. L. No. 110-175, 121 Stat. 2524 .......... *passim*

Pub. L. No. 89-487, 80 Stat. 250 (1966) .......... 3

Pub. L. No. 93-502, 88 Stat. 1561 (1974) .......... 5, 8, 21

**Other Authorities**

HOLMES, THE COMMON LAW (1881) .......................................................24

H.R. COMM. ON GOV'T OPERATIONS & S. COMM. ON THE JUDICIARY, 94TH CONG., FREEDOM OF INFORMATION ACT & AMENDMENTS OF 1974 (P.L. 93-502) / SOURCE BOOK (Joint Comm. Print 1975)...............................................................4, 5

H.R. REP. NO. 110-45 (2007) ...............................................................5, 21

Letter from James Madison to W.T. Barry (Aug. 4, 1822), LIBRARY OF CONGRESS, https://bit.ly/2LFhzE0.............................3

OPEN Government Act of 2005, S. 394, 109th Cong. (2005) (draft legislation).........................................................................12

S. REP. NO. 110-59 (2007) ..........................................................5, 6, 12, 21

## Amicus Identity & Interest[1]

### A. Identity of Public Record Media (PRM)

Public Record Media is a non-partisan nonprofit dedicated to robust enforcement of freedom-of-information laws.[2] For over 15 years, PRM has requested government records under the Freedom of Information Act (FOIA), 5 U.S.C. §552 (and analogous state laws) to make such records available to the press, the public, and policy-makers. PRM's successful use of FOIA has resulted in government disclosure of hundreds-of-thousands of pages of records, bringing to light many previously unknown government positions.

For example, through FOIA requests to the Federal Aviation Administration[3] and the Office of Legal Counsel,[4] PRM shed new light on the government's use of drones to deliver lethal force and to

---

1 PRM affirms that no party and no counsel for any party in this case: (1) wrote this brief in part or in whole; or (2) contributed money meant to fund the preparation or submission of this brief. Only PRM, including its members and counsel, have contributed money to fund the preparation and submission of this brief.

2 *See* Kevin Duchschere, *A Need to Know Drives St. Paul Nonprofit's Mission*, MINN. STAR TRIB., July 23, 2015; *see also* Jill Burcum (for the Star Tribune Editorial Board), *Walz Administration Fumbled Records Request*, STAR TRIB., Sept. 12, 2024, https://tinyurl.com/yc737es5..

3 PRM, *Update on FAA Drone Record Request*, TWIN CITIES DAILY PLANET, Mar. 11, 2014, https://tinyurl.com/yc4j5nyp.

4 Matt Ehling, *Community Voices: Drone Controversy Highlights Importance of Government Transparency*, MINN. POST, Feb. 25, 2013, https://tinyurl.com/mspakrmd.

patrol the U.S/Canada border. Similarly, through a FOIA request to the Department of Health and Human Services,[5] PRM uncovered a request by Minnesota's Medicaid director that staff at the Centers for Medicare and Medicaid Services not meet with Minnesota state lawmakers inquiring about state misuse of federal funds.

## B. PRM's Interest in *Energy & Policy Institute v. TVA*

This consolidated appeal concerns FOIA's fee-award provision, which allows courts to award fees in any case "in which the [FOIA] complainant has substantially prevailed." 5 U.S.C. §552(a)(4)(E). The last time that the Sixth Circuit issued a major precedential decision on the proper way to read FOIA's fee-award provision was 27 years ago. *See GMRI, Inc. v. EEOC*, 149 F.3d 449 (6th Cir. 1998).

PRM is interested in this appeal because the Sixth Circuit now has the chance to reject atextual hurdles to FOIA fee awards that arbitrarily harm every FOIA requester. PRM often pursues administrative and legal proceedings to enforce FOIA. As a small, grassroots organization, PRM depends on pro bono (or discounted) legal representation. On multiple occasions, PRM has received FOIA fee awards through negotiated settlements or court-ordered relief. This experience allows PRM to speak with particular clarity about the proper construction of FOIA's fee-award provision.

---

[5] Matt Ehling, *Community Voices: Drone Controversy Highlights Importance of Government Transparency*, MINN. POST, Feb. 25, 2013, https://tinyurl.com/mspakrmd.

# Argument

## I. The Sixth Circuit should reject atextual limits on attorney-fee awards under the Freedom of Information Act (FOIA).

### A. FOIA is an equal-opportunity disclosure statute meant to uphold agency transparency and accountability.

Open government is the heart of our nation. As James Madison notes, without "the power which knowledge gives," people cannot "mean to be their own Governors."[6] Madison thus concludes that "[a] popular government without popular information or the means of acquiring it is but a prologue to a farce or a tragedy."[7]

In this spirit, on July 4, 1966, Congress enacted FOIA. *See* Pub. L. No. 89-487, 80 Stat. 250 (1966) (codified mainly at 5 U.S.C. §552). "[FOIA] requires federal agencies to make government records available to the public and empowers federal courts to order an agency to produce agency records improperly withheld from an individual requesting access." *Rutila v. U.S. DOT*, 72 F.4th 692, 694 (5th Cir. 2023) (cleaned up). In this way, FOIA protects the people's essential right to know what their government is doing.

Before FOIA, the Administrative Procedure Act (APA) guided public access to agency information. *See EPA v. Mink*, 410 U.S. 73, 79 (1973). The APA's public-disclosure provision functioned "more as

---

6 Letter from James Madison to W.T. Barry (Aug. 4, 1822), *online at* LIBRARY OF CONGRESS, https://bit.ly/2LFhzE0.

7 *Id*.

a withholding statute than a disclosure statute." *Id.* FOIA reversed this trend. "[D]isclosure, not secrecy, [was] the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA established "concrete, workable standards" for disclosure and gave "any member of the public … [the] right to disclosure." *Mink*, 410 U.S. at 79; *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989). FOIA also codified "a judicially-enforceable public right to secure such information from possibly unwilling official hands." *Mink*, 410 U.S. at 79; *see* 5 U.S.C. §552(a)(4)(B).

In the years following FOIA's passage, federal agencies evaded FOIA's new pro-disclosure rules. Congressional review uncovered "poor records of [FOIA] compliance."[8] Such obstinacy gave rise to various FOIA "problem areas," a major one being a lack of "proper [FOIA] enforcement": "[i]n too many cases, information is withheld, overclassified, or hidden from the public to avoid administrative mistakes, waste of funds, or political embarrassment."[9]

Another problem area was FOIA's "cumbersome and costly legal remedy" for challenging wrongful denials of FOIA requests.[10] Requesters were winning FOIA suits, but this kind of litigation was

---

8 H.R. COMM. ON GOV'T OPERATIONS & S. COMM. ON THE JUDICIARY, 94TH CONG., FREEDOM OF INFORMATION ACT & AMENDMENTS OF 1974 (P.L. 93-502) / SOURCE BOOK, at p.14 (Joint Comm. Print 1975).

9 *Id.*

10 *Id.*

proving "less than feasible in many situations."[11] Congress observed the time-intensive nature of FOIA suits and that successful FOIA litigants still had to spend "thousands of dollars" in attorney's fees while combating many "advantages" that agencies enjoyed.[12]

So in 1974, Congress amended FOIA. *See* Pub. L. No. 93-502, 88 Stat. 1561 (1974). For the first time, Congress authorized courts to "assess against the United States reasonable attorney fees" in any FOIA case in which a FOIA requester "substantially prevailed." *Id.* at 1562. Through this amendment, Congress sought to ensure that no FOIA requester "should be forced to suffer" just because a given agency "failed to live up to [FOIA's] letter and spirit."[13]

Despite these aspirations, agencies continued to evade FOIA. *See* S. REP. NO. 110-59, at 3 (2007). Congress also noted the threat to FOIA posed by *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001). Under the logic of *Buckhannon,* FOIA's fee-award provision was a dead letter unless a FOIA requester won "a judgment on the merits or a court-ordered consent decree." *Id.* at 600. This reality then invited agencies "to delay compliance with a FOIA request" until moments before an adverse court decision. H.R. REP. NO. 110-45 at 4 (2007). Such belated

---

11 H.R. COMM. ON GOV'T OPERATIONS (FOIA SOURCE BOOK), *supra* note 8, at p.14.

12 *Id.*

13 *Id.* at p.264 (quoting Representative Alexander).

compliance would moot the FOIA suit, denying any judgment and, by extension, any fee award. *See* S. REP. NO. 110-59, at 4.

Congress responded with the OPEN Government Act of 2007 (OGA), Pub. L. No. 110-175, 121 Stat. 2524. The OGA guaranteed fee awards to requesters who "obtained relief through … a voluntary or unilateral change in position by the agency." 121 Stat. 2525 (§4). The OGA placed just one merits-related limit on these awards: requiring that "complainant's [FOIA] claim" be "not insubstantial." *Id.*

Through these "long overdue" reforms (and others), Congress reaffirmed that "government information belongs to all Americans" while acknowledging "[FOIA] has not always lived up to [the Act's] ideals." S. REP. NO. 110-59, at 12; 121 Stat. 2525 (§2(5)). That is FOIA in a nutshell: a "broadly conceived" statute meant to "pierce the veil of administrative secrecy" through a plain "emphasis on the fullest responsible disclosure." *Rose*, 425 U.S. at 361–62.

Put another way, as Justice Kavanaugh makes clear: "FOIA is an equal-opportunity disclosure statute." *Morley v. CIA*, 719 F.3d 689, 691 (D.C. Cir. 2013) (Kavanaugh, J., concurring). "For disclosure purposes," FOIA's plain text "treats all requests and requesters the same—no matter the identity of the requesters, the specific benefit that might be derived from the documents, or the requesters' overt or subtle motives." *Id.* Unfortunately, during an era when text was not supreme, various courts opted to "incentivize and reward only certain kinds of FOIA requests and requesters." *Id.*

### B. During a bygone era of statutory construction, various courts limited the availability of FOIA fee awards based on selective legislative history and policy concerns.

As noted above, FOIA authorizes fee awards to FOIA litigants:

> (i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
>
> (ii) … [A] complainant has substantially prevailed if the complainant has obtained relief through either—
>
> > (I) a judicial order, or an enforceable written agreement or consent decree; or
> >
> > (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. §552(a)(4)(E).

The history of this statutory text begins in 1974, when broad agency noncompliance with FOIA convinced Congress that FOIA needed a fee-award provision to even the scales between agencies and FOIA requesters. The text that Congress settled upon, however, reflected compromises that expanded §552(a)(4)(E) beyond what early House and Senate drafts of the provision initially supported. *See Vt. Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 512–13 (2d Cir. 1976) (detailing this legislative history).

A House committee report initially suggested conditioning FOIA fee awards "on a finding that the information sought was

improperly withheld from the complainant." *Id.* at 512. The House translated this condition to draft language providing: "[t]he court may assess against the United States reasonable attorney fees … in any [FOIA] case … **in which the United States or an officer or agency** … **has not prevailed**." *Id.* (bold added).

The Senate responded with new draft language broadening FOIA fee awards beyond cases of wrongful agency withholding: "[t]he court may assess … reasonable attorney fees … in any [FOIA] case … **in which the complainant has substantially prevailed**." *Id.* At the same time, the Senate proposed a multi-factor balancing test: "**[i]n exercising its discretion under this paragraph**, **the court shall consider** the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the government's withholding of the records sought had a reasonable basis in law." *Id.*

In the end, neither the House nor the Senate got all of the language that they suggested. The final bill did not condition FOIA fee awards on agency wrongdoing (the agency "not prevailing"). The final bill also did not condition FOIA fee awards on judicial application of a balancing test. The final bill instead simply stated that: "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." Pub. L. No. 93-502, 88 Stat. 1561, 1562 (1974).

The D.C. Circuit quickly became the go-to expert on FOIA's new fee-award provision given the Circuit's extensive FOIA docket. *See Wilson v. FBI*, 91 F.4th 595, 598 (2d Cir. 2024) (flagging the D.C. Circuit's status as a FOIA "specialist"). The D.C. Circuit established that FOIA's fee-award provision conditions a grant of fees on two questions: "fee eligibility" and "fee entitlement." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524–25 (D.C. Cir. 2011). The fee-eligibility question requires a court to consider whether a FOIA requester has "substantially prevailed." *Id.* The fee-entitlement question then requires a court to consider whether granting a fee award is a proper exercise of the court's discretion. *Id.*

Through each question, the D.C. Circuit read limits into FOIA's fee-award provision that lacked any basis in statutory text. The D.C. Circuit began this atextual project in 1977, when the court declared: "**[o]ur examination of … legislative history persuades us** that … [FOIA's fee-award provision] was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold." *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 711 (D.C. Cir. 1977) (bold added). The D.C. Circuit directed lower courts to gauge fee entitlement based on the "four factors" that the Senate included in its draft of FOIA's fee-award provision (the factors that never made it into the final bill). *Id.* at 714. But in the same breath, the D.C. Circuit warned lower courts "not to give any particular factor dispositive weight." *Id.*

Two years later (in 1979), the D.C. Circuit continued its atextual remaking of FOIA's fee-award provision when the court declared that to establish fee eligibility, FOIA litigants must prove a "causal nexus" between "the agency's surrender of the information" and a FOIA suit that "could reasonably be regarded as necessary." *Cox v. U.S. DOJ,* 601 F.2d 1, 6 (D.C. Cir. 1979). On this basis, the court held that a FOIA requester did not become eligible for a fee award just because "the [agency] released most of the requested information" and did so "after" the requester filed suit. *Id.* The D.C. Circuit held that to be eligible for fees, a FOIA requester must establish that his suit—rather than "unavoidable [agency] delay accompanied by due diligence"—*caused* a post-suit agency disclosure. *Id.*

The D.C. Circuit's atextual limits on FOIA fee awards soon became the norm across the nation. The Sixth Circuit adopted the D.C. Circuit's atextual multi-factor balancing test for fee entitlement through *Seegull Manufacturing Co. v. NLRB*, 741 F.2d 882 (6th Cir. 1984). Observing that FOIA's fee-award provision makes fee awards discretionary ("it only states that [a] court 'may' award such fees"), the *Seegull* panel determined that: "[t]he considerations relevant to the exercise of this discretion are the benefit to the public deriving from this case, the commercial benefit to the complainant and the nature of his interest in the records, and whether the government's withholding has a reasonable basis in law." *Id.* at 885–86; *see also id.* (citing sister circuit decisions adopting the same factors).

The Sixth Circuit later adopted the D.C. Circuit's atextual causation requirement for FOIA fee eligibility through *GMRI, Inc. v. EEOC*, 149 F.3d 449 (6th Cir. 1998). The FOIA litigant in *GMRI* "did not obtain a court order compelling the agency to produce requested documents." *Id.* at 451–52. The *GMRI* panel nevertheless held that the FOIA litigant might still eligible for a fee award: "[the FOIA litigant] will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that **the existence of the lawsuit had a causative effect upon the release of that information**." *Id.* (bold added). This standard coincides with "the catalyst test" that courts applied at one time in construing the meaning of "prevailing party" under a variety of fee-award provisions. *See, e.g.*, *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 447 (6th Cir. 2007) ("The first prong of the catalyst test is whether there is a causal connection between the suit and the allegedly beneficial outcome.").

Fast forward to 2001. Addressing proper interpretation of the phrase 'prevailing party' in fee-award provisions, the Supreme Court held this phrase limits the availability of fee awards to parties who prevail through "a judgment on the merits or a court-ordered consent decree." *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 600 (2001). Through this *Buckhannon* analysis, the Court buried the catalyst test. *See id.* at 610 ("[T]he 'catalyst theory' is not a permissible basis ….").

Congress fast realized that *Buckhannon* threatened FOIA:

> A government agency refuses to disclose documents even though they are clearly subject to FOIA. The FOIA requestor has no choice but to undertake the time and expense of hiring an attorney to file suit to compel FOIA disclosure. Sometime after the suit is filed, the government agency eventually decides to disclose the documents—thereby rendering the lawsuit moot. By doing so, the agency can cite *Buckhannon* for the proposition that, because there is no court-ordered judgment favoring the requestor, the requestor is not entitled to recover attorneys' fees [under FOIA's fee-award provision].

S. REP. NO. 110-59, at 4 n.3 (bold added).

Congress initially considered fixing this problem by codifying the catalyst test, authorizing fees if a FOIA requester's "pursuit of a non-frivolous claim or defense **has been a catalyst** for a voluntary or unilateral change in position by the opposing party." *See* OPEN Government Act of 2005, S. 394 (§4), 109th Cong. (2005). In the end, Congress settled on a fix that dispensed with the idea of causation entirely. Through the OPEN Government Act of 2007, Congress declared: "a [FOIA] complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency." 121 Stat. 2525. This brand new, express definition of "substantially prevailed' came with one limit: "**if the complainant's claim is not insubstantial**." *Id.*

The OGA does not condition FOIA fee awards on proof that a FOIA suit "had a causative effect upon the [agency's] release of [the] information [at issue]." *GMRI*, 149 F.3d at 451. Nor does the OGA condition FOIA fee awards on the satisfaction of any balancing test. While the OGA requires a "change in position by the agency" (e.g., producing records after withholding them), the cause of that change makes no difference for fee-award purposes so long as the change is "voluntary"—a term whose ordinary meaning ("non-influenced") cuts against any causation requirement (i.e., proof of influence). And in the years following the OGA's passage, the Supreme Court has repeatedly underscored that courts must obey the ordinary meaning of both FOIA provisions and fee-award provisions alike.

### C. Intervening Supreme Court precedent requires courts to follow the text of FOIA and fee-award provisions.

Four years after Congress passed the OGA (in 2007), the Supreme Court decided *Milner v. Department of the Navy*, 562 U.S. 562 (2011). *Milner* concerned FOIA Exemption 2, which protects material "related solely to the internal personnel rules and practices of an agency." *Id.* at 564. The D.C. Circuit held that these 12 words covered not only their ordinary meaning—"human resources and employee relations"—but also "records whose disclosure would risk circumvention of the law." *Id.* at 567. The D.C. Circuit justified this broad atextual expansion of Exemption 2—"High 2"—by citing "legislative history, 'and even common sense.'" *Id.* at 566.

In *Milner*, the Supreme Court struck down High 2. Citing the well-settled rule that "[s]tatutory construction must begin with the language employed by Congress," the Court excoriated the fact that "comparatively little attention has focused on [Exemption 2's] 12 simple words." *See id.* at 569. Examining those 12 words, the Court observed that "the only way to arrive at High 2 is by taking a red pen to the statute—cutting out some words and pasting in others." *See id.* at 573 (cleaned up). The government confirmed this reality through its "text-light" defense of High 2, which "relied primarily on legislative history, placing particular emphasis on [a] House Report." *Id.* The Court replied that it would not allow "ambiguous legislative history to muddy clear statutory language." *Id.*

The Supreme Court reinforced this mandate in *Food Marketing Institute (FMI) v. Argus Leader Media*, 588 U.S. 427, 436–37 (2019). *FMI* concerned FOIA Exemption 4, which governs "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. §552(b)(4). Since FOIA lacked any express definition of "confidential," the D.C. Circuit proceeded to declare that information was not "confidential" for purposes of Exemption 4 unless disclosure would "cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974). The D.C. Circuit devised this limit through "a selective tour" of "legislative history." *FMI*, 588 U.S. at 436–37.

In *FMI*, the Supreme Court bulldozed this atextual FOIA test. The Court declared: "[w]e cannot approve such a casual disregard of the rules of statutory interpretation." *See id.* at 436–37. The Court stressed that in "statutory interpretation disputes," a court's "proper starting point" is "careful examination of the ordinary meaning and structure of the law." *Id.* FOIA was no exception to this fundamental rule: "this Court has repeatedly refused to alter FOIA's plain terms on the strength only of arguments from legislative history." *Id.* The Court branded the D.C. Circuit's "contrary approach" a "relic from a 'bygone era of statutory construction.'" *Id.* at 437.

Applying the correct, text-focused approach to Exemption 4, the Court stressed the "ordinary, contemporary, common meaning" of Exemption 4's words. *Id.* at 433–34. Citing various dictionaries, the Court noted that "'confidential' meant … 'private' or 'secret.'" *See id.* at 434. The Court found no dictionary or plain-text support for the D.C. Circuit's substantial-competitive-harm test. *Id.* at 435–36. The Court also refused to entertain the idea that courts may be taken by the policy advantages of reading atextual limits into FOIA: "just as we cannot properly *expand* [FOIA] … beyond what [FOIA's] terms permit, we cannot arbitrarily *constrict* [FOIA] … by adding limitations found nowhere in [FOIA's] terms." *Id.* at 439.

The Supreme Court has expressed the same basic view when it comes to proper interpretation of fee-award provisions: courts may not cabin the ordinary meaning of a fee-award provision's text

through judicially-contrived atextual limits. Consider *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). At issue was the Patent Act's fee-award provision: "[t]he court in **exceptional** cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. §285. To give meaning to the word "exceptional," the Federal Circuit held this term covered "two limited circumstances" rooted in bad faith. 572 U.S. at 548. These two circumstances were: (1) "litigation-related misconduct of an independently sanctionable magnitude"; or (2) "litigation [that] was both 'brought in subjective bad faith' and 'objectively baseless.'" *Id.* at 554–55.

The Supreme Court demolished the Federal Circuit's formula, which "superimpose[d] an inflexible framework onto statutory text that is inherently flexible." *Id.* at 554–55. Because the Patent Act did not define 'exceptional,' the term's "**ordinary meaning**" controlled. *Id.* at 553 (bold added). The dictionary definition of "exceptional" is "'uncommon,' 'rare,' or 'not ordinary.'" *Id.* So the Court ruled that "an 'exceptional' case" for fee-award purposes under the Patent Act is "simply one that stands out." *Id.* A patent case might 'stand out' because of the "substantive strength of a party's litigating position" or due to unreasonable tactics. *Id.* at 554. The Court determined this view honored the broad text that Congress enacted. *Id.*

*Octane Fitness* brings into sharp relief the Supreme Court's hostility to "precise rule[s] or formula[s]" for applying fee-award provisions contrary to plain text. *Id.* at 554; *cf., Halo Elecs., Inc. v.*

*Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016) (cross-applying *Octane Fitness* to a broadly-worded damages provision in the Patent Act). Against this backdrop—and the Supreme Court's equal emphasis on adherence to FOIA's plain text—the D.C. Circuit's atextual limits on FOIA's fee-award provision cannot be sustained.

### D. FOIA's fee-award provision—broadened by the 2007 Open Government Act (OGA)—both lacks and negates any atextual causation rule for FOIA fee eligibility.

FOIA's fee-award provision, as amended by the 2007 OGA, authorizes fee awards to FOIA complainants who have "obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *See* 5 U.S.C. §552(a)(4)(E)(ii). This text does not condition FOIA fee awards on proof that a FOIA suit—versus some other motive (like a coin flip)—"caused [an agency's] release of … requested information." *GMRI*, 149 F.3d at 452. Enforcement of a causation rule then rewrites the OGA: one must "obtain[] relief through a ~~voluntary or unilateral~~ change in position by the agency *caused by the complainant's claim,* if the complainant's claim is not insubstantial."

Judge Berzon on the Ninth Circuit confirms the correctness of this analysis and the grave problems that attend rewriting the OGA in this manner. *See First Amendment Coal. v. U.S. DOJ*, 878 F.3d 1119, 1130 (9th Cir. 2017) (Berzon, J., concurring in the judgment). Though a meticulous term-by-term parsing of the OGA's text, Judge Berzon

establishes that the OGA "does not require a causal nexus between the litigation and the agency's disclosure." *Id.* (Berzon, J., concurring in the judgment). Judge Berzon also shows that superimposing an atextual causation requirement onto OGA's flexible plain language ("voluntary or unilateral") is "inappropriate and impermissible," even though "other [federal] courts have done so." *Id.*

Judge Berzon opens her analysis by listing the "three elements" that make up FOIA's fee-award provision (as relevant here): (1) "the [FOIA] complainant must have 'obtained relief'"; (2) "the relief must have been obtained through 'a voluntary or unilateral change' in the agency's position"; and (3) "the claim must be 'not insubstantial.'" *Id.* at 1131. The text of FOIA's fee-award provision says "[n]o more" and "no less." *See id.* The text does not mention any "causal nexus" requirement, or that a requester must show their FOIA suit *caused* a "voluntary [agency] disclosure or change in position." *Id.*

Judge Berzon next dissects each of the above three elements for any language that "could include a hidden causation requirement." *Id.* Judge Berzon explains that "to 'obtain relief' … means to receive the information a requestor is seeking"—the mere fact of relief does "not relate to the impetus behind the agency's action." *Id.* The "not insubstantial" element likewise hides no causation requirement. *Id.* "Whether a [FOIA] claim is 'substantial,' or 'not insubstantial,' bears on whether the claim has or may have merit. … [S]ubstantiality is a different inquiry from motive or causation." *Id.* at 1131–32.

That leaves "a voluntary or unilateral change in position." Judge Berzon observes this language <u>cuts against</u> any causation requirement because of the broad ordinary meaning of "voluntary": "not constrained, impelled, or influenced by another." *Id.* at 1131 (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2499 (1971)). The word "unilateral" reaffirms this breadth, describing "actions taken by one party independently of the other." *Id*. Both words "indicate independent action *not caused* by the complainant's litigation"—the <u>opposite</u> of a causation requirement. *Id.* (italics added).

So if the text of FOIA's fee-award provision does not support a causation requirement, where does this requirement come from? Judge Berzon observes that following Congress's 2007 enactment of the OGA, many courts reflexively assumed that all the OGA did was "reinstate[] the pre-*Buckhannon* catalyst theory of [fee-award] recovery." *Id.* at 1132–33. Courts did not review the OGA's actual text, which sweeps broader than the catalyst theory (as Congress's 2005 draft of the OGA shows). *Id.* "[N]one of [these] opinions did business with the language … or explained why the courts should add … a requirement that is simply not in the text." *Id.*

Judge Berzon also notes strong policy reasons for courts not to graft an atextual causation requirement onto FOIA's fee-award provision. By nature, causation involves "complicated, fact-bound determinations." *First Amendment Coal.*, 878 F.3d at 1133 (Berzon, J., concurring in the judgment). History and judicial experience then

show the "difficult multi-factor inquiries" that district courts must perform when "determin[ing] whether [a FOIA] lawsuit 'actually' caused [an agency's] disclosure or not." *Id.; see Buckhannon*, 532 U.S. at 609–10 ("[A] 'catalyst theory' hearing would require analysis of the defendant's subjective motivations in changing its conduct …. [I]t is clearly not a formula for 'ready administrability.'").

With the OGA, Congress enacted "a more administrable test" designed to "make whole" FOIA requesters "who simply should not have had to resort to litigation to obtain the information they wanted." *Id.* at 1136–37. "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The OGA avoids this problem by tying FOIA fee awards to "a voluntary or unilateral change in position by the agency." To apply this standard, one need only compare than agency's position before suit (e.g., failing to determine a FOIA request or denying the existence of responsive records) with the agency's position after suit (e.g., releasing requested records to a complainant).

"[This] straightforward, bright-line rule is easy to administer, reducing the risk of 'a second major litigation' …." *Lackey v. Stinnie*, No. 23-621, slip op. at 10 (U.S. Feb. 25, 2025). The alternative is an atextual descent into agency motivations that agencies may use to pound FOIA requesters into submission absent a grant of extensive discovery—a point that few FOIA requesters can afford to litigate. Judge Berzon thus concludes that "[courts] should take no comfort

from the fact that other circuits" impose a causation rule for FOIA fee awards. *See First Amendment Coal.*, 878 F.3d at 1136 (Berzon, J., concurring in the judg.). Judge Berzon is right, and the Sixth Circuit should end "insisting upon this statutory mirage." *Id.*

### E. FOIA's fee-award provision—broadened by the OGA—both lacks and negates any atextual balancing test for FOIA fee entitlement (a legislative-history figment).

When Congress first enacted FOIA's fee-award provision in 1974, the provision merely said: "[a] court may assess … attorney fees … in any case … in which the complainant has substantially prevailed." Pub. L. No. 93-502, 88 Stat. 1561 (1974). In the 2007 OGA, Congress expressly defined *substantially prevailed* for the first time: "a complainant has substantially prevailed if … [she] has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* Congress added this definition to clarify "FOIA requestors **would be entitled** to recover any attorneys' fees and litigation costs incurred to receive requested information … because of a voluntary [agency] change." S. REP. NO. 110-59, at 10; H.R. REP. NO. 110-45 at 12.

FOIA's fee-award provision thus stands in distinct contrast to situations like *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016). *Kirtsaeng* concerned the Copyright Act's discretionary allowance of "a reasonable attorney's fee to the prevailing party." 17 U.S.C. §505. This text authorized fee awards "without specifying standards that

courts should adopt, or guideposts they should use, in determining when such awards are appropriate." *Kirtsaeng*, 579 U.S. at 202–03. "[S]eeing a need for some additional guidance" to prevent arbitrary awards, the Supreme Court adopted an "objective-reasonableness approach" that advanced the Copyright Act. *Id.* at 203–4.

But FOIA's fee-award provision does not constitute the kind of "open-ended fee-shifting statute[]" that courts may supplement through articulation of atextual factors to avoid arbitrary awards. *Id*. Through the OGA, Congress shut the door on the provision's open-ended use of the term "substantially prevailed." And even if that were not the case, the D.C. Circuit's atextual, legislative-history-driven balancing test still defies the Supreme Court's unswerving rejection of D.C. Circuit decisions reading FOIA based on "selective tour[s]" of "legislative history." *FMI*, 588 U.S. at 436–37.

On this basis, Justice Kavanaugh sets forth a powerful case for "ditch[ing]" the D.C. Circuit's atextual balancing test for FOIA fee awards. *Morley*, 719 F.3d at 690–93 (Kavanaugh, J., concurring). Justice Kavanaugh observes that the D.C. Circuit's balancing test for FOIA fee awards has "no basis" in the language of FOIA's fee-award provision. *Id.* at 690–91 (Kavanaugh, J., concurring). Justice Kavanaugh next underscores the problem with this balancing test resting entirely on a Senate committee report when Supreme Court precedent now dictates that courts are bound to "heed the statutory text of FOIA, not committee reports." *Id.* (citing *Milner*).

Justice Kavanaugh then highlights the "continuing real-world problems" that the D.C. Circuit's atextual balancing test poses for courts and FOIA litigants alike. *Id.* at 693. The public-benefit factor almost "inevitably devolve[s] into what *the judge* subjectively thinks is important, rather than an objective determination." *See id.* at 691. Similar problems beset the commercial-benefit factor: "[c]ourts have stated … commercial benefit … counsels against a fee award. But no business is a bottomless well, and that is especially true of small businesses and individual proprietors." *Id.* at 691–92.

Justice Kavanaugh explains that all this arbitrariness defies FOIA's core nature as "an equal-opportunity disclosure statute." *Id.* at 691. To end this chaos, Justice Kavanaugh suggests replacing the atextual balancing test with *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400 (1968). Addressing fee awards under a civil-rights law, *Newman* establishes that prevailing plaintiffs "should ordinarily recover [fees] … unless special circumstances would render such an award unjust." *Id.* at 402–03. Justice Kavanaugh explains that "[a] *Newman*-style rule … would be clear … would treat FOIA requests and requesters equally, and would incentivize … FOIA plaintiffs with meritorious claims." *Morley,* 719 F.3d at 692.

And with this more-principled alternative on the table, Justice Kavanaugh concludes that no good reason exists to "reflexively cling" to the D.C. Circuit's atextual balancing test. *Id.* Drawn from legislative history at a time "when statutory text was less central

to statutory interpretation," *id.*, the D.C. Circuit's balancing test "arbitrarily constrict[s]" FOIA's fee-award provision "by adding limitations found nowhere" in its terms. *FMI,* 588 U.S. at 439. In short: *FMI* confirms that Justice Kavanaugh is right.

## II. Public Record Media's experience with FOIA and agency misconduct reaffirms the importance of judicial fidelity to the plain, broad text of FOIA's fee-award provision.

Through their thoughtful concurrences rejecting atextual limits on FOIA fee awards, Judge Berzon and Justice Kavanaugh cover the gamut in terms of every logical reason why courts should follow the plain, broad text of FOIA's fee-award provision to the letter. Public Record Media (PRM) recognizes, however, that "[t]he life of the law has not been logic: it has been experience." HOLMES, THE COMMON LAW 1 (1881). PRM's experience with FOIA's fee-award provision, in turn, illustrates the practical value of the provision's plain, broad text as a matter of: (1) compensating attorneys working at reduced rates to compel agency disclosure of public records and information; and (2) deterring the risk of FOIA misconduct by agencies.

For example, in October 2011, PRM sent a FOIA request to the Office of Legal Counsel (part of the U.S. Department of Justice) seeking information about government use of unmanned aerial vehicles (UAVs) to conduct lethal force operations. *See Pub. Record Media, LLC v. U.S. Dep't of Justice*, No. 0:12-cv-1225, 2013 U.S. Dist. LEXIS 81753, *1-2 (D. Minn. Jan. 29, 2013) (FOIA fee-award order),

*aff'd*, No. 0:12-cv-1225, 2013 WL 1900622, *1 (D. Minn. May 7, 2013) (district court affirming magistrate judge). This FOIA request listed "three different categories of information." *See id.* As relevant here, "the third category sought information related to lethal UAV force within the jurisdiction of the United States." *Id.* at *2.

Regarding this third category (and one other), DOJ initially said: "[w]e have identified several documents that are responsive" and that DOJ was "withholding these documents" based on three separate FOIA exemptions. *Id.* PRM filed a narrow administrative appeal contesting DOJ's withholding of documents related to the third category. *Id.* DOJ confirmed its receipt of PRM's appeal, but never substantively responded to the appeal. *Id.* at *3.

So PRM filed suit, seeking the third-category documents that DOJ was withholding. *See id.* Two months later, DOJ reversed its position, announcing that DOJ had no documents responsive to the third category. *See id.* PRM sought detailed confirmation of this DOJ assertion. *Id.* Finally, "[a]fter learning that no documents relating the third-category request existed, [PRM] stipulated to a dismissal of its claim." *Id.* at *3–4. PRM then moved for a FOIA fee award.

In this regard, PRM stressed the plain text of FOIA's fee-award provision: "though [DOJ's] change in position" was "a disclosure of dispositive information rather than a disclosure of records, the same statutory basis … for awarding fees" applied. PRM Fee Mot. Mem. 2, *Pub. Record Media, LLC v. U.S. Dep't of Justice*, No. 0:12-cv-1225 (D.

Minn. Oct. 30, 2012), (ECF No. 23). And under the OGA's plain text, agencies may not "avoid responsibility for [complainant] expenses" through changes that "render[] a [FOIA] case moot," like producing documents or "declaring no such documents exist." *Id.* at 14.

The district court granted PRM's fee motion. *See Pub. Record Media,* 2013 U.S. Dist. LEXIS 81753, at *5–15. The court recognized DOJ's "change from an initial, (seemingly) positive identification of documents … to the final conclusion that no such documents exist" was "a substantial change in position." *See id.* at *7. And "while no documents were ever produced," the court noted that "[PRM] and the public at large can still glean important information from this change—namely, the government does not possess any documents related to the lethal use of UAVs within U.S. jurisdiction." *Id.* Since DOJ made this disclosure only after PRM sued, the court found that PRM "'substantially prevailed' [on] its [FOIA] claim." *Id.*

Such analysis reaffirms the breadth of the OGA's plain text, extending FOIA's fee-award provision to all "voluntary … change[s] in position by the agency" without further qualification about these changes. PRM's experience shows that it matters not what form the change takes—be it a disclosure of new information or a production of requested records. And as Appellant Energy & Policy Institute's experience shows, it matters not whether the change was caused by an agency's internal deliberations or agency deference to the input of a non-agency third-party endorsing a disclosure.

## III. Adhering to the plain text of FOIA's fee-award provision, Energy & Policy Institute (EPI) merited a fee award.

In this case, the district court erred in concluding that EPI was not eligible to receive a FOIA fee award based on Tennessee Valley Authority's disclosure of various documents after EPI sued. *See EPI v. TVA*, No. 3:22-cv-220, 2025 U.S. Dist. LEXIS 20672, at *6–7 (E.D. Tenn. Feb. 5, 2025). The court reasoned TVA's disclosure entailed no "change in position *by the agency*" since TVA "released most of these documents in response to new representations by McGuireWoods" —a third party with an interest in the documents. *Id.*

Such analysis amends FOIA's fee-award provision to require proof of a "change in position by the agency *not caused by third-party representations*." But the provision contains no causation rule at all, much less one excluding voluntary changes-in-position informed by third-party information. *See First Amendment Coal.*, 878 F.3d at 1130 (Berzon, J., concurring in the judgment). The district court's analysis incorrectly "add[s] limitations" to FOIA's fee-award provision that appear "nowhere" in the provision. *FMI*, 588 U.S. at 439.

## Conclusion

"[A] free government like ours depends largely on the force of an informed public opinion." *Barr v. Matteo*, 360 U.S. 564, 577 (1959) (Black, J., concurring). FOIA's fee-award provision helps advance this key tenet—but only so long as courts follow the provision's text. The Sixth Circuit should make that clear in this case.

Respectfully submitted,

Dated: April 9, 2025

By: /s/Mahesha P. Subbaraman
Mahesha P. Subbaraman

Mahesha P. Subbaraman
SUBBARAMAN PLLC
80 S. 8th Street, Suite 900
Minneapolis, MN 55402
(612) 315-9210
mps@subblaw.com

*Counsel for Amicus Curiae*
*Public Record Media*

## Certificate of Compliance

The undersigned counsel certifies under FRAP 32(g) that this brief meets both the formatting and the type-volume requirements set by FRAP 29(a)(5) and 32(a) for amicus briefs submitted during initial consideration of a case on the merits.

This amicus brief is printed in 14-point, proportionately-spaced typeface using Microsoft Word 2010 and contains **6,475 words**, including headings, footnotes, and quotations, and excluding all items specifically identified under FRAP 32(f).

Dated: April 9, 2025

**SUBBARAMAN PLLC**

By: /s/Mahesha P. Subbaraman
Mahesha P. Subbaraman

*Counsel for Amicus Curiae*
*Public Record Media*

## Certificate of Service

The undersigned counsel hereby certifies that on April 9, 2025, he electronically filed the foregoing amicus brief with the Clerk of the Court for the U.S. Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned counsel further certifies that all participants in this appeal are registered CM/ECF users and that the CM/ECF system will accomplish service.

Dated: April 9, 2025

**SUBBARAMAN PLLC**

By: /s/Mahesha P. Subbaraman
Mahesha P. Subbaraman

*Counsel for Amicus Curiae*
*Public Record Media*